UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ROBERT G. HELSLEY,<br><br>    Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>    Defendant. | No. CV-08-00069-JPH<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are cross-motions for summary judgment noted for hearing without oral argument on November 7, 2008. (Ct. Rec. 16, 23). Attorney Maureen J. Rosette represents Plaintiff; Special Assistant United States Attorney Terrye E. Shea represents the Commissioner of Social Security ("Commissioner"). The parties have consented to proceed before a magistrate judge. (Ct. Rec. 8.) After reviewing the administrative record and the briefs filed by the parties, the court **GRANTS** Defendant's Motion for Summary Judgment (Ct. Rec. 23) and **DENIES** Plaintiff's Motion for Summary Judgment (Ct. Rec. 16.)

**JURISDICTION**

Plaintiff protectively filed an application for SSI benefits on January 17, 2006. (Tr. 696-699.) On February 27, 2006, he

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                                                      - 1 -

filed a Title II application. Both applications alleged onset as of January 1, 1997. (Tr. 68-70.) The applications were denied initially and on reconsideration. (Tr. 38-39, 43-45.) Administrative Law Judge (ALJ) Richard A. Say held a hearing on May 16, 2007. (Tr. 740-765.) Plaintiff, represented by counsel, medical expert Walter Scott Mabee, Ph.D., and vocational expert Deborah N. Lapoint testified. On June 2, 2007, the ALJ issued a decision finding that plaintiff was disabled, but substance abuse materially contributed to the finding, barring eligibility. (Tr. 19-29.) The Appeals Council considered updated records but denied a request for review on January 8, 2008. (Tr. 5-9.) Therefore, the ALJ's decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review pursuant to 42 U.S.C. § 405(g) on February 19, 2008. (Ct. Rec. 1, 4.)

**STATEMENT OF FACTS**

The facts have been presented in the administrative hearing transcript, the ALJ's decision, the briefs of both Plaintiff and the Commissioner, and will only be summarized here.

Plaintiff was 41 years old at the time of the hearing, has a high school equivalency diploma, and one year or two years of college. (Tr. 85, 135, 744-745.) Plaintiff has worked as a farm machine operator (driving a combine) and as a food processor. (Tr. 81, 87, 760-761.) He alleges disability as of June 1, 1997, due to depression, fatigue, medication side effects and difficulty coping with normal work stressors. (Tr. 80.) Plaintiff testified that he continues to drink. (Tr. 757.) Seroquel causes plaintiff

to feel drowsy and "dopey," experience dry mouth, and gain weight. (Tr. 755.)

## SEQUENTIAL EVALUATION PROCESS

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a Plaintiff shall be determined to be under a disability only if any impairments are of such severity that a plaintiff is not only unable to do previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if the person is engaged in substantial gainful activities. If so, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If not, the decision maker proceeds to step two, which determines whether plaintiff has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, plaintiff is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents plaintiff from performing work which was performed in the past. If a plaintiff is able to perform previous work, that Plaintiff is deemed not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, plaintiff's residual functional capacity ("RFC") assessment is considered. If plaintiff cannot perform this work, the fifth and final step in the process determines whether plaintiff is able to perform other work in the national economy in view of plaintiff's residual functional capacity, age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon plaintiff to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once plaintiff establishes that a physical or mental

impairment prevents the performance of previous work.  The burden then shifts, at step five, to the Commissioner to show that (1) plaintiff can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which plaintiff can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

Plaintiff has the burden of showing that drug and alcohol addiction (DAA) is not a contributing factor material to disability.  *Ball v. Massanari*, 254 F. 3d 817, 823 (9th Cir. 2001).  The Social Security Act bars payment of benefits when drug addiction and/or alcoholism is a contributing factor material to a disability claim.  42 U.S.C. §§ 423 (d)(2)(C)and 1382(a)(3)(J); *Sousa v. Callahan*, 143 F. 3d 1240, 1245 (9th Cir. 1998).  If there is evidence of DAA and the individual succeeds in proving disability, the Commissioner must determine whether the DAA is material to the determination of disability.  20 C.F.R. §§ 404.1535 and 416.935.  If an ALJ finds that the claimant is not disabled, then the claimant is not entitled to benefits and there is no need to proceed with the analysis to determine whether substance abuse is a contributing factor material to disability.  However, if the ALJ finds that the claimant is disabled, then the ALJ must proceed to determine if the claimant would be disabled if he or she stopped using alcohol or drugs.

## STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision.  42 U.S.C. § 405(g).  A Court must uphold the Commissioner's decision, made through an ALJ, when the

determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT - 6 -

substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

**ALJ'S FINDINGS**

At the outset the ALJ found plaintiff was last insured through September 30, 2000, for purposes of his DIB claim. (Tr. 21.) The ALJ found at step one that plaintiff has not engaged in substantial gainful activity since onset. (Tr. 22.) At steps two and three, the ALJ found that plaintiff suffers from substance abuse, depression, anxiety, and personality disorder, impairments that are severe. Relying on Dr. Mabee's testimony, the ALJ found that at step three, when DAA is included, plaintiff's impairments meet the requirements of Listings 12.04, 12.08 and 12.09. (Tr. 26.) The ALJ found plaintiff disabled, and performed an analysis pursuant to *Bustamante*[1] to determine whether plaintiff would be disabled if he stopped abusing substances. (Tr. 28.) The ALJ found that when substance abuse is excluded, plaintiff's remaining limitations would cause more than a minimal impact on his ability to perform basic work activities, but would not rise to Listings level impairment. (Tr. 26, alternate steps two and three.) In

---

[1] *Bustamante v. Massanari*, 262 F. 3d 949 (9th Cir. 2001).

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                                 - 7 -

assessing plaintiff's alternate RFC, the ALJ found plaintiff less than fully credible. (Tr. 28.) If plaintiff stopped abusing substances, the ALJ found plaintiff would have the residual functional capacity to perform a full range of exertional activities. (Tr. 26.) With respect to mental impairment when DAA is excluded, the ALJ found plaintiff is capable of understanding, remembering, and carrying out short and simple instructions, and of superficial interaction with the general public and coworkers. He takes medication for relief of symptoms, but is able to remain reasonably alert to perform required job functions. (Tr. 26.) Relying on the VE's testimony, the ALJ found at the alternate (DAA excluded) step four that plaintiff can perform his past relevant work as an agricultural produce sorter and store laborer. (Tr. 28.) ALJ Say found that because plaintiff would not be disabled if he stopped substance use, DAA is a contributing factor material to the determination of disability. Accordingly, he found plaintiff is barred from receiving benefits under the Social Security Act. (*Id.*)

**ISSUES**

Plaintiff contends that the Commissioner erred as a matter of law by finding that plaintiff would be able to work if not abusing substances, citing *Bustanmante* as support. Plaintiff alleges that the ALJ's erroneous finding occurred because he failed to properly credit the opinions of reviewing consultant Rita Flannagan, Ph. D., and testifying medical expert, Scott Mabee, Ph.D. (Ct. Rec. 17 at 11-16.)

The Commissioner responds that the ALJ appropriately weighed

the medical evidence and asks that the decision be affirmed. (Ct. Rec. 24 at 2.)

**DISCUSSION**

**A. Weighing medical evidence**

In social security proceedings, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 416.908. The effects of all symptoms must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptoms. 20 C.F.R. § 416.929. Once medical evidence of an underlying impairment has been shown, medical findings are not required to support the alleged severity of symptoms. *Bunnell v. Sullivan*, 947, F. 2d 341, 345 (9th Cr. 1991).

A treating physician's opinion is given special weight because of familiarity with the claimant and the claimant's physical condition. *Fair v. Bowen*, 885 F. 2d 597, 604-05 (9th Cir. 1989). However, the treating physician's opinion is not "necessarily conclusive as to either a physical condition or the ultimate issue of disability." *Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir. 1989) (citations omitted). More weight is given to a treating physician than an examining physician. *Lester v. Cater*, 81 F.3d 821, 830 (9th Cir. 1996). Correspondingly, more weight is given to the opinions of treating and examining physicians than to nonexamining physicians. *Benecke v. Barnhart*, 379 F. 3d 587, 592 (9th Cir. 2004). If the treating or examining

physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester*, 81 F. 3d at 830. If contradicted, the ALJ may reject an opinion if he states specific, legitimate reasons that are supported by substantial evidence. *See Flaten v. Secretary of Health and Human Serv.*, 44 F. 3d 1435, 1463 (9th Cir. 1995).

In addition to the testimony of a nonexamining medical advisor, the ALJ must have other evidence to support a decision to reject the opinion of a treating physician, such as laboratory test results, contrary reports from examining physicians, and testimony from the claimant that was inconsistent with the treating physician's opinion. *Magallanes v. Bowen*, 881 F.2d 747, 751-52 (9th Cir. 1989); *Andrews v. Shalala*, 53 F.3d 1042-43 (9th Cir. 1995).

Plaintiff contends that the ALJ erred when he weighed the opinions of Drs. Flannagan and Mabee.

Because the ALJ found plaintiff disabled, the issue on review is whether he applied the correct legal standards and substantial evidence supported his determination that DAA is material to the disability determination; i.e., whether plaintiff would be disabled if substance abuse ceased.

DAA

To determine if plaintiff would still be disabled if substance abuse stopped, the ALJ noted that no psychiatrist or psychologist has opined plaintiff is unable to work. Although plaintiff testified that he began experiencing mental problems (including mood swings and fatigue) in 1997, the ALJ found this is not supported by the record. There is no evidence to support any

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT - 10 -

severe mental impairment before plaintiff's second hospitalization in July of 2005, other than records of his chemical dependency treatment. (Tr. 28.)

The ALJ found plaintiff's repeated hospitalizations have been "related to alcohol abuse with concomitant suicidal ideation." (Tr. 28.) The ALJ notes plaintiff was admitted to ESH in 1989 after threatening suicide and his mother. He was drinking daily for 2-3 weeks, consuming about one fifth of whiskey in 24 hours. (Tr. 22, referring to Exhibit 12F.) The ALJ notes plaintiff threatened to kill himself and his family prior to hospitalization beginning July 13, 2005. His blood alcohol was .26. (Tr. 22, referring to Exhibit 1F; Tr. 131, 176.) Police found plaintiff on a rooftop on July 29, 2005. His blood alcohol was .349. Plaintiff said his memory of the event was impaired but he thought may have threatened to jump. (Tr. 23, referring to Exhibit 3F; Tr. 179, 183.) In an exhibit admitted by the Appeals Council but not provided to the ALJ, on January 24, 2007, plaintiff stated he "swallowed a bunch of pills and I was drinking heavily." (Tr. 522.)

The ALJ observes that the Global Assessments of Functioning[2]

---

[2] A GAF (Global Assessment of Functioning) of 61-70 indicates some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships. A GAF of 51-60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational or school functioning (e.g., few friends, conflicts with peers or co-workers. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION (DSM-IV), at p. 32.

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT - 11 -

made after plaintiff completed treatment indicate only mild symptoms in social or occupational functioning. (*See e.g.*, GAF of 70 at Tr. 650; GAF of 55-65 at Tr. 195; GAF highest past year (2006) of 65 at Tr. 430, 433.) Not noted by the ALJ but further supporting his conclusion is plaintiff's statement during his July 13, 2005 hospitalization that after alcohol treatment he felt well for a week and then relapsed. (Tr. 131.)

The ALJ observes that while personality disorders are by definition long-standing, plaintiff has been able to work in the past with his psychological disorder [variously diagnosed as depressive disorder, dysthymia, and, most recently, borderline personality disorder]. (Tr. 28.) Plaintiff alleges onset from June of 1997 but reported he worked for two years as a food processor, from 1992 through 1994, when presumably his personality disorder existed. (Tr. 81.)

The ALJ points out plaintiff's depression and anxiety have been exacerbated by his alcohol abuse, as noted by several medical professionals. The ALJ cites as an example the December 2005 opinion of examining psychologist John Tran, M.D., that when plaintiff binged on alcohol he stopped taking prescribed psychotropic medication and his symptoms were much worse. (Tr. 28, referring to Tr. 240.) The ALJ notes plaintiff reported he began drinking at age 15. He also reported his depression began at age 15.

The ALJ considered consulting agency psychologist Dr. Flannagan's opinion that plaintiff is capable of uncomplicated work with limited public interaction. (Tr. 28, referring to Tr. 215.) The ALJ notes that he considered evidence received after

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT - 12 -

Dr. Flannagan's April 17, 2006 opinion, including the hearing testimony. (Tr. 28.)  In assessing plaintiff's RFC, ALJ Say found plaintiff is capable of understanding, remembering, and carrying out short and simple instructions and of superficial interaction with the public and co-workers.  (Tr. 26.)  These limitations are consistent with Dr. Flannagan's narrative opinion.

The Commissioner is correct that ALJ Say's analysis is consistent with the approach approved recently by *Stubbs-Danielson v. Astrue*, 539 F. 3d 1169 (9th Cir. 2008):

> The ALJ translated Stubb-Danielson's condition, including the pace and mental limitations, into the only concrete restrictions available to him - Dr. Eather's recommended restriction to "simple tasks."  This does not, as [plaintiff] contends, constitute a rejection of Dr. McCollum's opinion.  Dr. Easther's assessment is consistent with Dr. McCollum's 2005 MRFCA, which found [plaintiff] is "not significantly limited" in her ability to "carry out very short simple instructions," "maintain attention and concentration for extended periods," and sustain an ordinary routine without special supervision.

*Stubbs-Danielson*, 539 F. 3d at 1174.  The Court noted that an ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence or pace where the assessment is consistent with restrictions identified in the medical testimony.  (*Id*.) The ALJ's RFC and hypothetical incorporated restrictions consistent with the medical evidence. To aid in weighing the evidence, the ALJ evaluated plaintiff's credibility and found him less than fully credible - an assessment not challenged on appeal.  (Tr. 28.)  Credibility determinations bear on evaluations of medical evidence when an ALJ is presented with conflicting medical opinions or inconsistency between a claimant's subjective complaints and diagnosed condition.  *See*

*Webb v. Barnhart*, 433 F. 3d 683, 688 (9th Cir. 2005).

It is the province of the ALJ to make credibility determinations. *Andrews v. Shalala*, 53 F. 3d 1035, 1039 (9th Cir. 1995). However, the ALJ's findings must be supported by specific cogent reasons. *Rashad v. Sullivan*, 903 F. 2d 1229, 1231 (9th Cir. 1990). Once the claimant produces medical evidence of an underlying medical impairment, the ALJ may not discredit testimony as to the severity of an impairment because it is unsupported by medical evidence. *Reddick v. Chater*, 157 F. 3d 715, 722 (9th Cir. 1998). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester v. Chater*, 81 F. 3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F. 3d at 834; *Dodrill v. Shalala*, 12 F. 3d 915, 918 (9th Cir. 1993).

The ALJ relied on several factors when he assessed credibility, including the lack of any evidence of severe impairment from the date of onset (June 1, 1997) until July of 2005 (except chemical dependency treatment), contrary to plaintiff's assertions. (Tr. 28.) The ALJ notes plaintiff's testimony of his daily activities: he attends intensive treatment courses five days a week, cares for personal needs, does laundry, cooks, shops, and drives. He goes to the library often and gets books and videos on a wide variety of subjects, including documentaries, wildlife, nutrition, and dogs. (Tr. 28, referring to Tr. 749-750.) He goes to AA meetings or the grocery store just to be around other people, watches television and draws. (Tr. 28,

referring to Tr. 751-752.)    The ALJ notes plaintiff indicated antidepressants have helped him.  (Tr. 28, referring to Tr. 755.)

The ALJ considered Dr. Mabee's testimony.  (Tr. 26, referring to Tr. 741-744.)  Dr. Mabee reviewed the record and opined that mid 2006 through late 2006, plaintiff's primary diagnosis is alcohol dependence, although there are references to mood and personality difficulties.  Throughout the record, Dr. Mabee noted, plaintiff was consistently diagnosed with alcohol dependency and relapse.  (Tr. 642.)  Dr. Mabee opined that plaintiff's condition meets the requirements of Listing 12.09, substance disorders, when DAA is included.  (Tr. 743.)  He opined that he could not separate plaintiff's mood and personality difficulties from his alcohol dependence.  (Tr. 744.)

Plaintiff relies on *Bustamante* for the proposition that the ALJ should have found plaintiff unable to work when DAA is excluded due to the seriousness of his mental illness.  *Bustamante* is distinguishable.  The ALJ erred by determining that Mr. Bustamante's mental impairments were "the product and consequence of his alcohol abuse" before making a disability determination pursuant to the five step sequential evaluation; to the extent he found Mr. Bustamante's mental impairments were not severe regardless of alcoholism, the conclusion was not supported by substantial evidence, and the Court remanded for a new five step analysis beginning with step three, instructing the ALJ to conduct the analysis without first separating out the impact of alcohol abuse.  *Bustamante*, 262 F. 2d at 954-956.

Unlike the ALJ in Bustamante, ALJ Say first determined plaintiff is disabled at step three when DAA is included.  He then

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT - 15 -

performed the mandatory alternate sequential evaluation to determine if plaintiff would still be disabled if DAA is stopped.

As indicated, ALJ Say found plaintiff's mental impairments of depression, anxiety, and personality disorder severe at step two without DAA, because he found they would cause more than minimal impairment. (Tr. 22.) He notes plaintiff was assessed with normal cognitive functioning, intelligence within normal limits, and good memory. In contrast, Mr. Bustamante was assessed, in part, with moderate to severe depressive features, and with marked impairment in activities of daily living, cognitive functioning, and interpersonal relations. ALJ Say's legal analysis is without error. He was not presented with a clear record of marked impairment when DAA is excluded, unlike the record in *Bustamante*.

The ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony. *Magallanes v. Bowen*, 881 F. 2d 747, 751 (9th Cir. 1989). It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. The court has a limited role in determining whether the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for that of the ALJ, even if it might justifiably have reached a different result upon de novo review. 42 U.S.C. § 405 (g).

The ALJ provided clear and convincing reasons for finding plaintiff's allegations not fully credible. The ALJ weighed the medical evidence and found plaintiff disabled when DAA is included. The ALJ weighed the evidence as a whole and concluded plaintiff would have be able to perform some simple work with limited public and co-worker interaction if DAA is excluded.

The ALJ's assessment of the medical and other evidence is supported by the record and free of legal error.

**CONCLUSION**

Having reviewed the record and the ALJ's conclusions, this court finds that the ALJ's decision is free of legal error and supported by substantial evidence..

**IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment **(Ct. Rec. 16)** is **GRANTED.**

2. Plaintiff's Motion for Summary Judgment **(Ct. Rec. 13)** is **DENIED.**

The District Court Executive is directed to file this Order, provide copies to counsel for Plaintiff and Defendant, enter judgment in favor of Defendant, and **CLOSE** this file.

DATED this 8th day of December, 2008.

s/ James P. Hutton

JAMES P. HUTTON
UNITED STATES MAGISTRATE JUDGE
